Judge Robertson
delivered the opinion of the Court.
Luckett sued Freeman in detinue, fo.r a horse. On the issue of non detinet, with leave to give in evidence any special matter, which might be pleaded; the jury found a verdict for Luckett, and the court rendered judgment on it in his favor. From this judgment, Freeman has prosecuted a writ of error, with a supersedeas,.to this court.
Only two questions are presented by the record, which we deem it necessary to consider.
1st. Did the court err in refusing to admit Dand-ridge Freeman as a witness for the plaintiff in error®
*391 2d. Did it err in instructing the jury, that in estimating the value of the horse, they should be governed by the value at the time of the verdict?
Dandridge Freeman, wheh offered as a witness, was rejected by the court, without being sworn or interrogated on his '■'■voir dire.” It appeared, from the testimony, that the plaintiff in error, as a deputy sheriff, had levied a fieri facias, in favor of Dandridge Freeman against J. Bratton, on the horse now in con- , Iroversy, and sold him. The horse had been the' acknowledged property of Bratton, and the time of the levy, was in his possession; that Dandridge was also a deputy sheriff, and that the plaintiff in error had been appointed, at his instance and On his responsibility.
The reason assigned for deciding that D. Freeman was not a competent witness, was that, on a former day of the term, on an application for a continuance, he offered to make affidavit for obtaining it, and stated that he considered himself interested in the case, because the plaintiff in error, being appointed at his instance, he felt himself responsible, and had agreed to be responsible to the sheriff, for his acts as deputy.
This is an insufficient objection. This suit is against the plaintiff in error, in his individual character. The sheriff cannot be prejudiced by any judgment in the case. The record could never be used against him. And, therefore, in this particular, D. Freeman had no interest in the event of this suit. But he ought to have been sworn, and then interrogated as to his interest. For then, if he had persisted in the belief that he was interested, he would have been incompetent, whether he had any legal interest or not. If he had, on oath, stated, that he felt interested, and assigned, as the reason, that which has been stated, then it would have been proper for the court to instruct him that he had no legal interest which would disqualify him. ’ If, after this advice, he had declared that he had changed his opinion as to his interest, he would have been competent; but if he had still persisted in the belief, that he was interested, he ought to have been discarded, because, it is not the, being interested, but the feeling so, which renders. *392 a witness incompetent. In England, it seems to be the prevalent doctrine, that a witness who really has no legal interest in the event of the suit, is competent, although he may admit that he feels interested. But this, is not the law of evidence here, and never should be. See II. Munford, 148. ,
Still, if the witness be in error in supposing that he has an interest, and the court shall convince him of his mistake, he should be considered restored to competency, as the only objection to it, will have been removed. This is the practice of Vermont and some other states of the Union. See II. Tyler’s Vermont Reports, 278; and we approve the practice as eligible and legal.
Proof that a witness has declared that he was interested, will not deprive the party wishing to use him* of the benefit of his testimony, because; 1st. What the witness may have said, is not a declaration of the party himself; and, therefore, should not be evidence against him. 2d. The witness was not sworn, and may have made a false statement for the purpose of depriving the party of his testimony. 3d. He might have been mistaken, or if not then mistaken, his interest may have been extinguished before he is called on to depose.
But if the party admit, or it be proved that he had acknowledged, that his witness was not competent, this will be “prima facie,” sufficient to exclude him.
Whatever Dandridge Freeman may have said, therefore, on a former occasion, and when he was not sworn, could not prove his incompetency. Nor should he have been rejected, if he had repeated on his voir dire, the opinion that he was interested, provided he had changed, (as he might have done,) that opinion, on being informed by the court that he was mistaken. Hence, he ought to have been sworn to answer questions.
But it is said that it is apparent on the record, that E). Freeman was incompetent, because he was the plaintiff in the execution, which was levied on the horse. This could not disqualify him, unless he had made himself responsible to the plaintiff in error, for *393 his eventual indemnity, either by express contract, Or by directing the levy on the horse, or be in some other way necessarily interested. And it does not appear that he would be thus responsible, or was thus interested. If he be not responsible to either the plaintiff or the defendant, in any event, dr cannot lose his defat, he is competent, otherwise he would be incompetent.
In trovei,s value of thing at tilB? of gutiu dei'in-uejury should give yalueofthia* It time of S verdici.
It does not appear whether he would lose or gain by a verdict in this case. He may be interested; but the simple fact that he was the creditor in the execution; does not prove it necessarily. Therefore, the circuit court could not know that the witriess was incompetent, without an examination of him on oath, or other proof of interest. Wherefore, it erred in rejecting him without such proof, and before he was Sworn on his voir dire. If he had been thus sworn, he would have been competent, unless he disclosed some legal interest in the event of this suit.
There is no error in the instruction to the jury. In detinue, the plaintiff, if he obtain a judgment, will be entitled to the specific thirigsued for, if it can be had; and, therefore, if he cannotget it, he should have its value, at the time when it is decided that the thing is his. If it'shall have increased in Value from the first cap'tion or detention of it; until the trial, as it is his, the accession of valuers his also. If it shall have decreased in value without the fault of the defendant, for the same reason, the plaintiff, if he elect to sue for it specifically, should be content with its diminished valúe. For as he elects to take the thing itself, of course he determines to take it as it is, and of whatever value it may be. If it shall have'been injured in quality or reduced in value; by the abuse of the defendant, the plaintiff may recover for this injury or reduction, in damages. In this respect, there is no analogy between detinue and trover. In the latter action, the plaintiff abandons his right to the thing converted, and asks for damages for the conversion of it by the defendant. The ordinary measure of these damages, is the value of the thing at the time of the conversion. But detinue is brought for the thing itself; and consequently; the judgment *394 being in the alternative, for the thing or its value,that value must be what the thing is worth when the verdict is rendered.
i’etition for, a rc-thcaring.
Triplett, for plaintiff; Monroe, for defendant.
But for the error in rejecting the witness, the judgment of the circuit court must' be reversed, the ver'dict set aside, and the cause remanded for a new trial.